**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**
**(PHILADELPHIA)**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| **DANIEL M JONES, AND ARLENE R JONES,** | ) | **CASE NO.: 21-11907-AMC** |
| | ) | **CHAPTER 13** |
| **DEBTORS.** | ) | **JUDGE ASHELY M. CHAN** |
| | ) | |
| **NEWREZ LLC,** | ) | |
| | ) | |
| **MOVANT.** | ) | |
| | ) | |
| **DANIEL M JONES AND ARLENE R JONES,** | ) | |
| **DEBTORS** | ) | |
| **KENNETH E. WEST, TRUSTEE,** | ) | |
| | ) | |
| **RESPONDENTS.** | ) | |

**MOTION OF NEWREZ LLC, FOR RELIEF FROM AUTOMATIC STAY UNDER § 362**

1. Movant is NewRez LLC.
2. Debtor is the owner of the property described as 1001 Hazelwood Drive Philadelphia, Pennsylvania 19150 (hereinafter the “Property”).
3. Movant is the holder of a Mortgage, with an original principal amount of $250,813.00 on the mortgaged premises, that was executed on October 7, 2015. Said mortgage was recorded on October 20, 2015. Documentation provided is in support of right to seek a lift of stay and foreclose if necessary.
4. Kenneth E. West is the Trustee appointed by the Court.
5. As of August 19, 2026, Debtor has failed to make the monthly payments for the months of April 1, 2026 through August 1, 2026, in the amount of $2,057.40 each, minus ($2,022.28) in suspense for a total arrearage of $8,264.72.
6. As of August 19, 2026 the principal balance owed is $193,144.38.

7. In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant will also incur $1,350.00 in legal fees and $199.00 in costs. Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

8. Movant is entitled to relief from stay for cause.

9. Movant further seeks relief in order to, at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement. Movant may contact Debtor via telephone or written correspondence to offer such an agreement. Any such agreement shall be non-recourse unless included in a reaffirmation agreement.

10. This motion and the averments contained therein do not constitute a waiver by Movant of its right to seek reimbursement of any amounts not included in this motion, including fees and costs, due under the terms of the mortgage and applicable law.

11. NewRez LLC services the underlying mortgage loan and note for the property referenced in this motion for Movant. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note. The Note is endorsed in blank. Movant is the beneficiary or the assignee of the Deed of Trust.

WHEREFORE, Movant prays that an Order be entered modifying the Stay and permitting Movant to proceed with its mortgage foreclosure on the mortgaged premises, and

to allow the Sheriff's Grantee to take any legal action to enforce its right to possession of the mortgage premises. Further, Movant prays that an Order be entered awarding Movant the costs of this suit, reasonable attorney's fees in accordance with the mortgage document and current law together with interest.

Dated: September 17, 2026

Respectfully Submitted,
/s/ Alyk L. Oflazian
Alyk L. Oflazian, Esq.
Pennsylvania Bar # 312912
PADGETT LAW GROUP
1055 E. Baltimore Pike, Suite 201
Media, PA 19063
(850) 422-2520 (telephone)
(850) 422-2567 (facsimile)
Alyk.Oflazian@padgettlawgroup.com
*Counsel for Movant*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to the parties on the attached Service List by electronic notice and/or by First Class U.S. Mail on this 17th day of September 2026.

***VIA U.S. MAIL***

*DEBTOR*
DANIEL M JONES
1001 HAZELWOOD DRIVE
PHILADELPHIA, PA 19150

*JOINT DEBTOR*
ARLENE R JONES
1001 HAZELWOOD DRIVE
PHILADELPHIA, PA 19150

***VIA ELECTRONIC NOTICE***

*DEBTORS ATTORNEY*
BRAD J. SADEK
SADEK LAW OFFICES, LLC
1500 JFK BOULEVARD
STE 220
PHILADELPHIA, PA 19102
EMAIL: BRAD@SADEKLAW.COM

*TRUSTEE*
KENNETH E. WEST
OFFICE OF THE CHAPTER 13 STANDING TRUSTEE
190 N. INDEPENDENCE MALL WEST
SUITE 701
PHILADELPHIA, PA 19106
ECFEMAILS@PH13TRUSTEE.COM

*U.S. TRUSTEE*
OFFICE OF UNITED STATES TRUSTEE
ROBERT N.C. NIX FEDERAL BUILDING
900 MARKET STREET
SUITE 320
PHILADELPHIA, PA 19107
USTPREGION03.PH.ECF@USDOJ.GOV

/s/ Alyk L. Oflazian
Alyk L. Oflazian, Esq.
Pennsylvania Bar # 312912
PADGETT LAW GROUP
1055 E. Baltimore Pike, Suite 201
Media, PA 19063
(850) 422-2520 (telephone)
(850) 422-2567 (facsimile)
Alyk.Oflazian@padgettlawgroup.com
*Counsel for Movant*

[redacted]

FHA Case No. [redacted]

# NOTE

Multistate

**October 7, 2015**
[Date]

**Philadelphia,**
[City]

**Pennsylvania**
[State]

**1001 Hazelwood Dr, Philadelphia, PA 19150**
**[Property Address]**

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **Ditech Financial LLC**

and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of **TWO HUNDRED FIFTY THOUSAND EIGHT HUNDRED THIRTEEN AND NO/100*********************************** Dollars (U.S. **$250,813.00** ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **THREE AND THREE-FOURTHS** percent ( **3.750 %** ) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the **1st** day of each month beginning on **December 1, 2015.** Any principal and interest remaining on the **1st** day of **November, 2045** will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at **P.O. Box 7169**
**Pasadena, CA 91109-7169**

or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. **$1,161.55.** This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

[Check applicable box] ☐ Graduated Payment Allonge ☐ Growing Equity Allonge
☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**

**Borrower has the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When Borrower makes a Prepayment, Borrower will tell the Lender in writing that Borrower is doing so. Borrower may not designate a payment as a Prepayment if Borrower has not made all the monthly payments due under the Note.**

**Borrower may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Lender will use the Prepayments to reduce the amount of Principal that Borrower owes under this Note. However, the Lender may apply the Prepayment to any accrued and unpaid interest on the Prepayment amount before applying the Prepayment to reduce the Principal amount of the Note. If Borrower makes a partial Prepayment, there will be no changes in the due date or in the amount of the monthly payment unless the Lender agrees in writing to those changes.**

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of **15** calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent ( **4.000 %** ) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and



[redacted]

LOAN # [redacted]

all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

**DANIEL M JONES** **(Seal)**

**ARLENE R JONES** **(Seal)**

**Lender: Ditech Financial LLC**
**NMLS ID:** [redacted]
**Loan Originator: Mark Alexander Bodary**
**NMLS ID:** [redacted]

**Pay to the order of**

**Without Recourse**

**Melinda Breitman**
**Authorized Signor**
**Ditech Financial LLC**



[redacted]

eRecorded in Philadelphia PA Doc Id: 52979120
10/20/2015 01:05PM Receipt#: 1538571
Page 1 of 14 Rec Fee: $222.00
Commissioner of Records Doc Code: M
State RTT: Local RTT:

**When recorded, return to:**
**Ditech Financial LLC, c/o Indecomm**
**Global Services**
**1260 Energy Lane**
**St. Paul, MN 55108**

**This document was prepared by:**
**Derek Colquhoun**
**Ditech Financial LLC**
**1100 Virginia Drive, Suite 100A**
**Fort Washington, PA 19034**
**215-734-8260**

**APN #:** [redacted]

**Title Order No.:** [redacted]

**LOAN #:** [redacted]

[Space Above This Line For Recording Data]

FHA Case No. [redacted]

**Commonwealth of Pennsylvania**

# MORTGAGE

[redacted]

THIS MORTGAGE ("Security Instrument") is given on **October 7, 2015.**
The Mortgagor is **Daniel M Jones and Arlene R Jones**

("Borrower").



[redacted]

**LOAN #:** [redacted]

**"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.
**Ditech Financial LLC**

("Lender") is organized and existing under the laws of **Delaware,**
and has an address of **3000 Bayport Drive, Suite 880, Tampa, FL 33607.**

Borrower owes Lender the principal sum of **TWO HUNDRED FIFTY THOUSAND EIGHT HUNDRED THIRTEEN AND NO/100****************************************************************** Dollars (U.S. **$250,813.00** ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **November 1, 2045.** This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in **Philadelphia** County, Pennsylvania:
**APN #:** [redacted]

**LOAN #:** [redacted]

which has the address of **1001 Hazelwood Dr, Philadelphia,**
[Street, City],

Pennsylvania **19150** ("Property Address");
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have



[redacted]

**LOAN #:** [redacted]

been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 **et seq.** and implementing regulations, 24 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether



[redacted]

**LOAN #:** [redacted]

now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or



[redacted]

**LOAN #:** [redacted]

for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:



[redacted]

**LOAN #:**[redacted]

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obliga-



[redacted]

**LOAN #:** [redacted]

tions that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.



[redacted]

**LOAN #:** [redacted]

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.



[redacted]

**LOAN #:** [redacted]

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**21. Reinstatement Period.** Borrower's time to reinstate provided in paragraph 10 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**22. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**23. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider



[redacted]

**LOAN #:** [redacted]

shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider ☐ Growing Equity Rider ☐ Planned Unit Development Rider
☐ Graduated Payment Rider ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

10/7/15 (Seal)
**DANIEL M JONES** **DATE**

10/7/15 (Seal)
**ARLENE R JONES** **DATE**



[redacted]

**LOAN #:** [redacted]

**Commonwealth of** PENNSYLVANIA
**County of PHILADELPHIA**

**On this, the 7th day of OCTOBER, 2015, before me,** SYLVIA E GRAHAM **the undersigned officer, personally appeared DANIEL M JONES AND ARLENE R JONES, known to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.**

**In witness whereof I hereunto set my hand and official seal.**

**My commission expires:** AUG 14, 2019 [signature]

NOTARY
**Title of Officer**

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Sylvia E. Graham, Notary Public
City of Philadelphia, Philadelphia County
My Commission Expires Aug. 14, 2019
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

**Lender: Ditech Financial LLC**
**NMLS ID:** [redacted]
**Loan Originator: Mark Alexander Bodary**
**NMLS ID:** [redacted]



[redacted]

**LOAN #:** [redacted]

Certificate of Residence

I, Kathin Long, do hereby certify that the correct address of the within-named Mortgagee is 3000 Bayport Drive, Suite 880, Tampa, FL 33607.

Witness my hand this 7 day of Oct 2015

Agent of Mortgagee



**Initials:**
PAEFHALD 0315
PAEFHALD
10/07/2015 10:40 AM PST

[redacted]

Loan # [redacted]

## Exhibit A

LEGAL DESCRIPTION

The following described property:

All that certain lot or piece of ground, situate in the 50th Ward of the City of Philadelphia and described according to a Survey and Plan of Property (C.P. No. 221-BLK No. 31) made by Francis X. Burns, Surveyor and Regulator of the Ninth Survey District, dated August 28, 1989 and last augmented by John P. Parkinson P.L.S., Surveyor and Regulator of the Ninth Survey District on September 20, 2004:

Beginning at a point on the Southeasterly side of Ivy Hill Road (45 feet wide), said point being the Northeasterly end of a curved corner that connects the Northeasterly side of Hazelwood Drive (54 feet wide) with the said Southeasterly side of side of Ivy Hill Road; Thence extending along the said Southeasterly side of Ivy Hill Road North 39 degrees 57 minutes 14 seconds East, the distance of 68 feet 0 inches to a point; Thence extending South 50 degrees 02 minutes 46 seconds East, the distance of 32 feet 8-3/4 inches to a point; Thence extending South 39 degrees 57 minutes 14 seconds West, the distance of 83 feet 0 inches to a point on the said Northeasterly side of Hazelwood Drive (54 feet wide); Thence extending along the said Northeasterly side of Hazelwood Drive North 50 degrees 02 minutes 46 seconds West, the distance of 17 feet 8-3/4 inches to a point of curvature; Thence extending Northward around a curved corner on the arc of a circle curving to the right, having a radius of 15 feet 0 inches the arc distance of 23 feet 6-3/4 inches to a point of tangency on the said Southeasterly side of Ivy Hill Road, the first mentioned point and place of beginning, County of Philadelphia, State of Pennsylvania.

Being the same parcel conveyed to Daniel M. Jones and Arlene R. Jones from Cardano Goodson Construction Co. a PA. Corp., by virtue of a Deed Dated 3/10/2006, Recorded 3/13/2006, in Deed as Instrument No. 51397533 County of Philadelphia, State of Pennsylvania.

Assessor's Parcel No: [redacted]

**Recorded in Philadelphia PA Doc Id: 53840962**
**06/01/2021 04:25 PM Page 1 of 3 Rec Fee: $224.75**
**Receipt#: 21-56050**
**Records Department Doc Code: A**

**PENNSYLVANIA**
COUNTY OF **PHILADELPHIA**
LOAN NO.[redacted]

[redacted]

WHEN RECORDED MAIL TO
**FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID** 83402. PH **208-528-9895**

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt whereof is hereby acknowledged, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR DITECH FINANCIAL LLC, ITS SUCCESSORS AND ASSIGNS** located at **1901 E VOORHEES STREET SUITE C, DANVILLE, IL 61834** or **P.O. Box 2026, FLINT, MICHIGAN 48501-2026**, Assignor, does hereby grant, bargain, assign, transfer, convey, and set over unto **NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING** located at **55 BEATTIE PLACE, SUITE 110, MS#001, GREENVILLE, SC 29601**, Assignee, its successors and assigns, that certain Mortgage dated **OCTOBER 07, 2015** executed by **DANIEL M JONES AND ARLENE R JONES**, Mortgagor, to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR DITECH FINANCIAL LLC, ITS SUCCESSORS AND ASSIGNS**, Original Mortgagee, in the amount of **$250,813.00** and recorded on **OCTOBER 20, 2015** in the Office of the Register, Recorder, or County Clerk of **PHILADELPHIA** County, State of **PENNSYLVANIA**, as Document No. **52979120**, more particularly described and commonly known as:

**SEE ATTACHED LEGAL DESCRIPTION**
Property Address: **1001 HAZELWOOD DR, PHILADELPHIA, PA 19150**
**CITY OF PHILADELPHIA**

TOGETHER WITH all rights, title, and interest in and to the premises, accrued or to accrue under said Mortgage.

TO HAVE AND HOLD the same unto Assignee, its successors and assigns, to Assignees proper use and benefit.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on **MAY 05, 2021**.

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR DITECH FINANCIAL LLC, ITS SUCCESSORS AND ASSIGNS**

Katie Olson
**KATIE OLSON, VICE PRESIDENT**

[redacted]



[redacted]

STATE OF **IDAHO** COUNTY OF **BONNEVILLE** ) ss.

On **MAY 05, 2021**, before me, **SHIRLEY LEDVINA**, personally appeared **KATIE OLSON** known to me to be the **VICE PRESIDENT** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR DITECH FINANCIAL LLC, ITS SUCCESSORS AND ASSIGNS** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

Shirley Ledvina

**SHIRLEY LEDVINA (COMMISSION EXP. 06/23/2026)**
NOTARY PUBLIC

SHIRLEY LEDVINA
Notary Public - State of Idaho
Commission Number [redacted]
My Commission Expires Jun 23, 2026

I do hereby certify that the precise address of the Assignee Residence is:
**NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, 55 BEATTIE PLACE, SUITE 110, MS#001, GREENVILLE, SC 29601**

Katie Olson

**KATIE OLSON, VICE PRESIDENT**

[redacted]

[redacted]

LEGAL DESCRIPTION

All that certain lot or piece of ground, situate in the 50th Ward of the City of Philadelphia and described according to a Survey and Plan of Property (C.P. No. 221-BLK No. 31) made by Francis X. Burns, Surveyor and Regulator of the Ninth Survey District, dated August 28, 1989 and last augmented by John P. Parkinson P.L.S., Surveyor and Regulator of the Ninth Survey District on September 20, 2004:

Beginning at a point on the Southeasterly side of Ivy Hill Road (45 feet wide), said point being the Northeasterly end of a curved corner that connects the Northeasterly side of Hazelwood Drive (54 feet wide) with the said Southeasterly side of side of Ivy Hill Road; Thence extending along the said Southeasterly side of Ivy Hill Road North 39 degrees 57 minutes 14 seconds East, the distance of 68 feet 0 inches to a point; Thence extending South 50 degrees 02 minutes 46 seconds East, the distance of 32 feet 8-3/4 inches to a point; Thence extending South 39 degrees 57 minutes 14 seconds West, the distance of 83 feet 0 inches to a point on the said Northeasterly side of Hazelwood Drive (54 feet wide); Thence extending along the said Northeasterly side of Hazelwood Drive North 50 degrees 02 minutes 46 seconds West, the distance of 17 feet 8-3/4 inches to a point of curvature; Thence extending Northward around a curved corner on the arc of a circle curving to the right, having a radius of 15 feet 0 inches the arc distance of 23 feet 6-3/4 inches to a point of tangency on the said Southeasterly side of Ivy Hill Road, the first mentioned point and place of beginning, County of Philadelphia, State of Pennsylvania.

[redacted]

# Delaware

The First State



***I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF AMENDMENT OF "NEW PENN FINANCIAL, LLC", CHANGING ITS NAME FROM "NEW PENN FINANCIAL, LLC" TO "NEWREZ LLC", FILED IN THIS OFFICE ON THE NINTH DAY OF OCTOBER, A.D. 2018, AT 4:57 O`CLOCK P.M.***

***AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF AMENDMENT IS THE SEVENTH DAY OF JANUARY, A.D. 2019.***

Jeffrey W. Bullock, Secretary of State

4336363 8100
SR# 20187059692

Authentication: 203582539
Date: 10-10-18

State of Delaware
Secretary of State
Division of Corporations
Delivered 04:57 PM 10/09/2018
FILED 04:57 PM 10/09/2018
SR 20187059692 - File Number 4336363

# STATE OF DELAWARE
# CERTIFICATE OF AMENDMENT

1. Name of Limited Liability Company: New Penn Financial, LLC

2. The Certificate of Formation of the limited liability company is hereby amended as follows:

Legal name change. New Penn Financial, LLC's new legal name will be NewRez LLC effective January 7, 2019.

**IN WITNESS WHEREOF**, the undersigned have executed this Certificate on the 3RD day of October, A.D. 2018.

By: [signature]
Authorized Person(s)

Name: Kevin Patrick Harrigan President and CEO - Origination Division; Board of Managers
Print or Type

| Post-Petition Due date | Date Received | Amount Received | Amount Due | Suspense Application | Suspense Balance |
|---|---|---|---|---|---|
| | | | | | |
| | | | | $ - | $ - |
| 8/1/2021 | 7/31/2021 | $1,926.83 | $1,908.86 | $ 17.97 | $ 17.97 |
| 9/1/2021 | 9/9/2021 | $1,908.86 | $1,908.86 | $ - | $ 17.97 |
| 10/1/2021 | 10/8/2021 | $1,908.86 | $1,908.86 | $ - | $ 17.97 |
| 11/1/2021 | 11/4/2021 | $1,908.86 | $1,908.86 | $ - | $ 17.97 |
| 12/1/2021 | 11/11/2021 | $1,908.86 | $1,908.86 | $ - | $ 17.97 |
| 1/1/2022 | 12/2/2021 | $1,908.86 | $1,908.86 | $ - | $ 17.97 |
| 2/1/2022 | 12/31/2021 | $1,908.86 | $1,908.86 | $ - | $ 17.97 |
| 3/1/2022 | 2/10/2022 | $1,908.86 | $1,908.86 | $ - | $ 17.97 |
| 4/1/2022 | 3/10/2022 | $1,908.86 | $1,908.86 | $ - | $ 17.97 |
| 5/1/2022 | 3/24/2022 | $1,908.86 | $1,908.86 | $ - | $ 17.97 |
| 6/1/2022 | 4/21/2022 | $1,908.86 | $1,908.86 | $ - | $ 17.97 |
| 7/1/2022 | 5/20/2022 | $1,908.86 | $1,908.86 | $ - | $ 17.97 |
| 8/1/2022 | 7/28/2022 | $2,122.90 | $2,122.90 | $ - | $ 17.97 |
| 9/1/2022 | 8/26/2022 | $2,122.90 | $2,122.90 | $ - | $ 17.97 |
| 10/1/2022 | 9/22/2022 | $2,122.90 | $2,122.90 | $ - | $ 17.97 |
| 11/1/2022 | 11/4/2022 | $2,122.90 | $2,122.90 | $ - | $ 17.97 |
| 12/1/2022 | 11/19/2022 | $2,122.90 | $2,122.90 | $ - | $ 17.97 |
| 1/1/2023 | 12/29/2022 | $2,122.90 | $2,122.90 | $ - | $ 17.97 |
| | 1/26/2023 | $4.81 | | $ 4.81 | $ 22.78 |
| 2/1/2023 | 2/3/2023 | $2,122.90 | $2,122.90 | $ - | $ 22.78 |
| 3/1/2023 | 2/23/2023 | $2,122.90 | $2,122.90 | $ - | $ 22.78 |
| 4/1/2023 | 3/23/2023 | $2,122.90 | $2,122.90 | $ - | $ 22.78 |
| 5/1/2023 | 4/19/2023 | $2,122.90 | $2,122.90 | $ - | $ 22.78 |
| 6/1/2023 | 5/19/2023 | $2,122.90 | $2,122.90 | $ - | $ 22.78 |
| 7/1/2023 | 6/29/2023 | $2,122.90 | $2,122.90 | $ - | $ 22.78 |
| 8/1/2023 | 7/27/2023 | $2,644.28 | $2,644.28 | $ - | $ 22.78 |
| 9/1/2023 | 8/26/2023 | $2,644.28 | $2,644.28 | $ - | $ 22.78 |
| | 9/20/2023 | $2,400.00 | | $ 2,400.00 | $ 2,422.78 |
| 10/1/2023 | 9/21/2023 | $2,101.73 | $2,644.28 | $ (542.55) | $ 1,880.23 |
| | 9/27/2023 | $95.00 | | $ 95.00 | $ 1,975.23 |
| 11/1/2023 | 10/19/2023 | $2,101.73 | $2,101.73 | $ - | $ 1,975.23 |
| 12/1/2023 | 11/16/2023 | $2,101.73 | $2,101.73 | $ - | $ 1,975.23 |
| 1/1/2024 | 12/28/2023 | $2,101.73 | $2,101.73 | $ - | $ 1,975.23 |
| 2/1/2024 | 1/25/2024 | $2,101.73 | $2,101.73 | $ - | $ 1,975.23 |
| 3/1/2024 | 2/22/2024 | $2,101.73 | $2,101.73 | $ - | $ 1,975.23 |
| 4/1/2024 | 3/21/2024 | $2,101.73 | $2,101.73 | $ - | $ 1,975.23 |
| 5/1/2024 | 4/18/2024 | $2,101.73 | $2,101.73 | $ - | $ 1,975.23 |
| 6/1/2024 | 5/16/2024 | $2,101.73 | $2,101.73 | $ - | $ 1,975.23 |
| 7/1/2024 | 6/27/2024 | $2,101.73 | $2,101.73 | $ - | $ 1,975.23 |
| 8/1/2024 | 7/25/2024 | $2,101.73 | $2,101.73 | $ - | $ 1,975.23 |
| 9/1/2024 | 8/22/2024 | $2,101.73 | $2,101.73 | $ - | $ 1,975.23 |
| 10/1/2024 | 9/20/2024 | $1,979.82 | $2,101.73 | $ (121.91) | $ 1,853.32 |
| 11/1/2024 | 10/31/2024 | $1,979.82 | $1,979.82 | $ - | $ 1,853.32 |
| 12/1/2024 | 11/28/2024 | $1,979.82 | $1,979.82 | $ - | $ 1,853.32 |
| 1/1/2025 | 12/27/2024 | $1,979.82 | $1,979.82 | $ - | $ 1,853.32 |
| 2/1/2025 | 1/23/2025 | $1,979.82 | $1,979.82 | $ - | $ 1,853.32 |
| 3/1/2025 | 2/20/2025 | $1,979.82 | $1,979.82 | $ - | $ 1,853.32 |
| 4/1/2025 | 3/20/2025 | $1,979.82 | $1,979.82 | $ - | $ 1,853.32 |
| 5/1/2025 | 4/21/2025 | $1,979.82 | $1,979.82 | $ - | $ 1,853.32 |
| 6/1/2025 | 5/12/2025 | $1,979.82 | $1,979.82 | $ - | $ 1,853.32 |
| 7/1/2025 | 7/6/2025 | $1,979.82 | $1,979.82 | $ - | $ 1,853.32 |
| 8/1/2025 | 8/13/2025 | $1,979.82 | $1,979.82 | $ - | $ 1,853.32 |
| 9/1/2025 | 11/26/2025 | $2,032.13 | $1,979.82 | $ 52.31 | $ 1,905.63 |
| 10/1/2025 | 12/26/2025 | $2,057.00 | $1,979.82 | $ 77.18 | $ 1,982.81 |
| 11/1/2025 | 1/22/2026 | $2,057.40 | $2,017.13 | $ 40.27 | $ 2,023.08 |
| 12/1/2025 | | | $2,017.13 | $ (2,017.13) | $ 5.95 |
| | 2/19/2026 | $2,017.13 | | $ 2,017.13 | $ 2,023.08 |
| 1/1/2026 | 4/30/2026 | $2,057.40 | $2,057.40 | $ - | $ 2,023.08 |
| 2/1/2026 | 6/4/2026 | $2,057.00 | $2,057.40 | $ (0.40) | $ 2,022.68 |
| 3/1/2026 | 6/29/2026 | $2,057.00 | $2,057.40 | $ (0.40) | $ 2,022.28 |
| 4/1/2026 | | | $2,057.40 | $ (2,057.40) | $ (35.12) |
| 5/1/2026 | | | $2,057.40 | $ (2,057.40) | $ (2,092.52) |
| 6/1/2026 | | | $2,057.40 | $ (2,057.40) | $ (4,149.92) |
| 7/1/2026 | | | $2,057.40 | $ (2,057.40) | $ (6,207.32) |
| 8/1/2026 | | | $2,057.40 | $ (2,057.40) | $ (8,264.72) |
| | | | | $ - | $ (8,264.72) |
| | | | | $ - | $ (8,264.72) |
| 61 | 59 | $117,521.30 | $125,786.02 | $ (8,264.72) | |

| Loan Number | [redacted] |
|---|---|
| Debtor | JONES |
| BK filed date | 7/7/2021 |
| BK Case # | 21-11907 |
| Post Next Due | 4/1/2026 |
| Suspense | $ 2,022.28 |

| Due Date | Due Amount | # Months | Total Due |
|---|---|---|---|
| 4/1/2026 - 8/1/2026 | $2,057.40 | 5 | $ 10,287.00 |
| | | | $ - |
| | | | $ - |
| | | | $ - |
| | | | $ - |
| | | | $ - |
| | | | $ - |
| | | | $ - |
| | | | $ - |
| | | | $ - |
| | | | $ - |
| | | | $ - |
| | | | $ - |
| | | Subtotal | $ 10,287.00 |
| | | Less Unapplied | $ 2,022.28 |
| | | Total to bring current | $ 8,264.72 |

$ 10,287.00
$ (8,264.72)
$ 2,022.28 unapplied

**Payment Address:**
Shellpoint Mortgage Servicing
PO Box 650840
Dallas, TX 75265-0840

**Overnight Payment Address:**
Shellpoint Mortgage Servicing
Attn Payment Processing
75 Beattie Place Ste LL202
Greenville, SC 29601

| Due Date | P&I | Interest Rate | Escrow | Total | Filed w/Courts |
|---|---|---|---|---|---|
| 8/1/2021 | $1,161.55 | 3.750% | $747.31 | $1,908.86 | POC - 8/10/2021 |
| 8/1/2022 | $1,161.55 | 3.750% | $961.35 | $2,122.90 | PCN - 6/24/2022 |
| 8/1/2023 | $1,161.55 | 3.750% | $1,482.73 | $2,644.28 | PCN - 7/5/2023 |
| 11/1/2023 | $1,161.55 | 3.750% | $940.18 | $2,101.73 | PCN - 10/3/2023 |
| 11/1/2024 | $1,161.55 | 3.750% | $818.27 | $1,979.82 | PCN - 10/11/2024 |
| 11/1/2025 | $1,161.55 | 3.750% | $855.58 | $2,017.13 | PCN - 9/26/2025 |
| 1/1/2026 | $1,161.55 | 3.750% | $895.85 | $2,057.40 | PCN - 12/9/2025 |